**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THOMAS SEDOR**<br>**Plaintiff,**<br><br>**v.**<br><br>**COMMONWEALTH OF PENNSYLVANIA,**<br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **Civil Action No.**<br><br><br>**Complaint and Jury Demand** |

**CIVIL ACTION**

Plaintiff, Thomas Sedor (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Commonwealth of Pennsylvania (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Northampton, PA.
3. Upon information and belief, the Office of Attorney General – Bureau of Narcotics is an arm of the government of Defendant Commonwealth of Pennsylvania; it is the Commonwealth of Pennsylvania's law enforcement division focusing on narcotics with a

location at 7310 Tilghman Street, Suite 600, Allentown, PA 18106 and with headquarters located at Strawberry Square, 14th Floor, Harrisburg, PA 17120.

4. Defendant is a public agency as defined by 29 C.F.R. § 825.108(a) as it is the government of a state and therefore is considered an employer as defined by 29 C.F.R. § 825.104(a).

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

8. At all times relevant hereto, Defendant employed at least fifteen (15) employees within the Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

9. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

10. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe

Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

11. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

12. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

13. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant operates in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

15. Plaintiff exhausted his administrative remedies under Title VII and the PHRA.

16. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), signed on April 7, 2026, alleging age and associational disability discrimination as well as retaliation against Defendant.

17. The Charge was assigned a Charge Number 530-2026-05397 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

18. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated June 16, 2026.

19. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

20. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

21. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

22. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

23. Plaintiff was born in 1967.

24. In or around February 2007, Defendant hired Plaintiff in the position of Narcotics Officer.

25. Plaintiff was well qualified for his position and performed well.

## PLAINTIFF APPLIED FOR INTERMITTENT FAMILY AND MEDICAL LEAVE ACT LEAVE IN ORDER TO TAKE HIS DISABLED SON TO DOCTOR'S APPOINTMENTS

26. In or around the spring of 2025, Plaintiff applied for Intermittent Leave pursuant to the Family-Care provisions of the Family and Medical Leave Act ("FMLA") in order to take his son, who has autism, to doctor's appointments.

27. Autism is a serious health condition under the FMLA and is considered to be a disability under the Pennsylvania Human Relations Act ("PHRA").

28. The major life activities affected by autism include, but are not limited to, communicating and caring for one's self.

29. Defendant approved Plaintiff's request for Intermittent FMLA leave and Plaintiff continued to have it recertified.

30. Kirk Schwartz, Supervisory Narcotics Agent and Plaintiff's direct supervisor, knew of Plaintiff's son's disability and that Plaintiff utilized Intermittent FMLA leave in order to care for his disabled son.

**PLAINTIFF APPLIED FOR A PROMOTION, BUT DEFENDANT SELECTED A YOUNGER AND LESS QUALIFIED CANDIDATE**

31. In or around early 2025, Plaintiff applied for the Supervisory Narcotics Agent position within Region I, a supervisory position, which he was well qualified for.
32. Plaintiff had the most experience of the candidates who applied for the position.
33. However, Defendant selected James Smith (late 40's) for the position despite having significantly less experience than Plaintiff.
34. James Elo, Regional Director, supervised Region I during the promotional process.
35. Plaintiff learned that Elo instructed members of the interview panel not to select Plaintiff.
36. Following his interview, Plaintiff asked Christie Bonesch, Senior Deputy Attorney General, for feedback on his interview.
37. Bonesch responded, "We are not going there," and stated that HR is very involved in this", or words to that effect.

**PLAINTIFF FILED A COMPLAINT REGARDING THE PROMOTIONAL PROCESS**

38. On or about March 4, 2025, Plaintiff filed a complaint with Shari McGraw, Director of Human Resources and Office Services, via email that the promotional process was discriminatory based on his age.
39. Plaintiff attached his signed performance evaluations, the position posting and the interview panel list.
40. On or about March 6, 2025, Vania Tonelotti, Human Resources Analyst and Equal Employment Opportunity Officer, acknowledged receipt of Plaintiff's complaint.

**PLAINTIFF MET WITH TONELOTTI REGARDING HIS COMPLAINT, BUT DEFENDANT DETERMINED HIS COMPLAINT WAS UNSUBSTANTIATED**

41. Tonelotti scheduled a meeting with Plaintiff for on or about March 14, 2025 at Defendant's Norristown office regarding his complaint.
42. Plaintiff attended the meeting with Toneletti on or about March 14, 2025.
43. Defendant later notified Plaintiff that his complaint was unsubstantiated.

**SCHWARTZ ISSUED PLAINTIFF A PERFORMANCE EVALUATION WITH UNWARRANTED LOWERED RATINGS IN TWO (2) CATEGORIES**

44. On or about March 19, 2025, Schwartz issued Plaintiff a performance evaluation with lowered ratings in the Professional Development and Interpersonal Relations/EEO categories.
45. The lowered ratings on Plaintiff's performance evaluation were unwarranted.
46. Plaintiff signed the performance evaluation because he feared further mistreatment from Elo.
47. Elo had previously yelled at Plaintiff and used inappropriate language when Plaintiff respectfully disagreed with him about work-related matters.

**PLAINTIFF COMPLAINED TO TONELETTI REGARDING THE LOWERED SCORES ON HIS PERFORMANCE EVALUATION**

48. On or about March 20, 2025, Plaintiff complained to Toneletti via email that the lower score on his performance review was in retaliation for his complaint of age and associational disability discrimination and utilization of his Intermittent FMLA leave.
49. On or about March 24, 2025, Plaintiff emailed Toneletti and reported that Schwartz had referred to him as a "problem."

**SCHWARTZ ATTEMPTED TO PROHIBIT PLAINTIFF FROM RECEIVING OVERTIME PAY**

50. On or about April 25, 2025, Plaintiff served as the affiant in a jury trial in Lehigh County, which concluded in a guilty verdict on all charges.
51. Plaintiff returned to the Allentown Regional Office after the court proceedings ended in order to re-secure evidence.
52. Plaintiff submitted a notice of one (1) hour of overtime for the court-related duties and the evidence transport.
53. Schwartz proceeded to question Plaintiff about the start time of the trial and advised him that all overtime required prior authorization, including overtime due to unpredictable court proceedings.
54. Throughout Plaintiff's eighteen (18) year career with Defendant to that point, Plaintiff had regularly submitted overtime for extended court proceedings without issue.
55. Defendant ultimately approved Plaintiff's overtime.

**SCHWARTZ ANNOUNCED THAT TIME WOULD BE DEDUCTED FROM FUTURE DOCTOR'S APPOINTMENTS AND THAT COMPLAINTS HAD BEEN MADE TO HUMAN RESOURCES DURING A SQUAD MEEING**

56. That same day, a Region I squad meeting was held.
57. During this meeting, Schwartz announced that time would be deducted for future doctor's appointments.
58. Schwartz stated that those instructions came down the chain of command because of complaints made about the regional atmosphere.
59. Schwartz disclosed the existence of an official Human Resources complaint in the group setting.

60. Plaintiff reasonably believed that this new rule regarding time being deducted for doctor's appointments specifically targeted him as he had Intermittent FMLA leave to take his disabled son to doctor's appointments in retaliation for his complaint.

**PLAINTIFF COMPLAINED TO MCGRAW AND TONELOTTI THAT HE WAS BEING RETALIATED AGAINST**

61. Later that day on or about April 25, 2025, Plaintiff emailed a complaint to McGraw and Tonelotti regarding the retaliation he was subjected to.

**DEFENDANT DEDUCTED PLAINTIFF'S TIME, BUT DID NOT DEDUCT THE TIME OF OTHER NARCOTICS AGENTS**

62. On or about April 28, 2025, Plaintiff reported to Defendant that other Narcotics Agents regularly arrived well after 9:00 a.m. without any deduction of time.

63. Defendant deducted time from Plaintiff, but did not deduct the time from the other Narcotics Agents, who were younger and/or did not request and utilize FMLA leave and/or did not make complaints of retaliation.

64. On or about April 30, 2025, Plaintiff requested restored leave.

65. However, Elo denied Plaintiff request for restored leave.

**PLAINTIFF REQUESTED A TRANSFER TO A DIFFERENT SQUAD, BUT DID NOT RECEIVE A RESPONSE**

66. On or about May 6, 2025, Plaintiff emailed Elo and requested a transfer from Schwartz's squad to Smith's squad.

67. However, Elo did not respond to Plaintiff's transfer request.

**DEFENDANT REVOKED PLAINTIFF'S PREVIOUSLY APPROVED REMOTE WORK ARRANGMENT**

68. Previously, in or around January 2025, Schwartz had approved remote work arrangement for Plaintiff.

69. On or about May 7, 2025, Schwartz revoked Plaintiff's previously approved telework arrangement.

70. However, upon information and belief, Narcotics Agents who did not make complaints and/or utilize FMLA leave were allowed to continue to work remotely.

**PLAINTIFF COMPLAINED OF RETALIATION AND SUBSEQUENTLY HAD HIS ATTENDANCE AND SCHEDULE SCRUTINIZED**

71. On or about May 9, 2025, Plaintiff emailed McGraw and Tonelotti reporting the continued retaliatory treatment he was subjected to by Elo and Schwartz.

72. Thereafter, Elo and Schwartz heavily scrutinized Plaintiff's attendance and schedule which Plaintiff reasonably believed was done to discourage him from using his approved Intermittent FMLA leave.

**PLAINTIFF REPORTED AN ILLEGAL SEARCH AND SEIZURE**

73. On or about July 24, 2025, Defendant's agents executed a search warrant, in which Plaintiff participated in.

74. Defendant's agents completed the search and transported the suspect from the residence.

75. Defendant's agents thereafter left the residence.

76. Approximately three (3) hours later, Schwartz re-entered the residence and located a bag containing approximately 103 grams of fentanyl.

77. Sean Haggery, Regional Director, either entered the residence during the re-entry or observed Schwartz during the re-entry.

78. No judicial authorization, consent or subsequent search warrant was obtained before the re-entry.

79. Additionally, neither a Regional Attorney nor the Northampton County District Attorney's Office was consulted before the re-entry.

80. Plaintiff objected that a new search warrant or the suspect's consent was required before agents could re-enter the residence.

81. Plaintiff promptly reported his concern to Smith, who acknowledged receipt.

**PLAINTIFF FOLLOWED UP REGARDING HIS REPORT OF THE ILLEGAL SEARCH AND SEIZURE, BUT DEFENDANT DISMISSED IT**

82. On or about November 18, 2025, Plaintiff submitted a written request for review to Sybil Murphy, Chief Integrity Officer of the Office of Professional Responsibility.

83. Plaintiff reported that the re-entry raised concerns under the Fourth Amendment to the United States Constitution and under the Constitution of the Commonwealth of Pennsylvania.

84. Plaintiff identified Schwartz and Haggarty engaging in the re-entry and that the re-entry could affect the admissibility of evidence and officer liability.

85. Plaintiff made his report in good faith and in order to protect the integrity of Defendant.

86. On or about November 18, 2025, Plaintiff separately emailed McGraw and advised that he was concerned about retaliation, changes in treatment, or adverse employment actions in response to his report to the Office of Professional Responsibility.

87. On or about January 5, 2026, Plaintiff emailed Murphy to follow up on his report as he had not received acknowledgement.

88. Defendant proceeded to clear Schwartz and Haggarty of any wrongdoing.

**SMITH ENGAGED IN SEXUALLY INAPPROPRIATE CONDUCT**

89. In or around the fall of 2025, Defendant assigned Adrian Monroy (female), Narcotics Agent, to the Region I office on temporary duty.
90. Within days of Monroy's arrival, Smith told Plaintiff and several other male Narcotics Agents to "be careful", or words to that effect, around Monroy.
91. Smith stated that Monroy was "promiscuous with male agents and supervisors", or words to that effect.
92. Smith stated that he "wouldn't be using the words 'cock' and 'dick' around Agent Monroy", or words to that effect.
93. Smith continued that he was "giving that warning to everyone", or words to that effect.
94. In or around early November 2025, Smith told Plaintiff, "Hey, I heard your buddy banged Monroy at the All Agents Conference at Kalahari", or words to that effect.
95. Smith encouraged Plaintiff to verify if that rumor was true.
96. Smith stated that he contacted the person he believed to be involved in the alleged incident in order to confirm the allegation.

**PLAINTIFF REPORTED SMITH'S SEXUALLY INAPPROPRIATE CONDUCT, BUT DEFENDANT DISMISSED HIS COMPLAINT AS UNFOUNDED**

97. On or about November 18, 2025, Plaintiff submitted a formal complaint to McGraw and Murphy regarding Smith's repeated sexually inappropriate comments about a female subordinate.
98. Defendant did not investigate Plaintiff's complaint until on or about December 12, 2025.
99. Defendant eventually dismissed Plaintiff's allegations against Smith on or about May 21, 2026.

**PLAINTIFF INADVERTENTLY SENT TEXT MESSAGES TO A SECRETARY**

100. Plaintiff exchanged text messages with a female Secretary assigned to Defendant's Allentown office.

101. The Secretary's first name and the first name of Plaintiff's intended recipient both begin with the letter "A".

102. The Secretary's contact entry appeared directly next to the intended recipient's contact entry in Plaintiff's personal phone.

103. Plaintiff inadvertently selected the Secretary's contact and sent her videos that were intended for the other recipient.

104. The Secretary acknowledged via text message that the videos were not intended for her and did not report the messages at the time she received them.

105. Some of the messages at issue were approximately two (2) years old at the time Defendant raised them with Plaintiff.

**HAGGARTY MANDATED A MEETING REGARDING THE "BRIDGELINE INCIDENT"**

106. On or about October 31, 2025, Haggarty emailed all Narcotics Agents and mandated a meeting regarding an incident referred to as the "bridgeline incident."

**TONELOTTI REQUESTED TO MEET WITH PLAINTIFF REGARDING A HUMAN RESOURCES INVESTIGATION**

107. On or about November 13, 2025, Tonelotti emailed Plaintiff and requested a meeting regarding an ongoing confidential Human Resources investigation.

108. Tonelotti advised Plaintiff that he had been identified as someone with mitigating information.

**DEFENDANT BLAMED PLAINTIFF FOR THE "BRIDGELINE INCIDENT" AND FOR PLACING A BUMPER STICKER ON A COWORKER'S CAR**

109. On or about November 14, 2025, Defendant issued Plaintiff an Office of Professional Responsibility ("OPR") notice and blamed Plaintiff for the "bridgeline incident" and for a bumper sticker placed on Eric Schaedel's, Narcotics Agent, vehicle.

110. Importantly, upon information and belief, OPR only interviewed Plaintiff and one other Narcotics Agent regarding the "bridgeline incident", despite multiple other law enforcement officials from different agencies also being involved.

111. In addition, upon information and belief, OPR only interviewed Plaintiff regarding the bumper-sticker allegation, despite multiple Agents being aware of and/or potentially involved in the allegation.

**DEFENDANT PLACED PLAINTIFF OF PAID ADMINISTRATIVE LEAVE REGARDING THE TEXT MESSAGES HE SENT TO THE SECRETARY INADVERTENTLY**

112. On or about November 17, 2025, Plaintiff met with Tonelotti and Nehemiah Haigler, Deputy Chief.

113. At that meeting, Defendant advised Plaintiff of the allegations regarding the text messages.

114. Before Plaintiff was given an opportunity to provide his side of the story, Tonelotti stated to Plaintiff that she would "like to punch [Plaintiff] in the face", or words to that effect.

115. By letter dated November 17, 2025, McGraw placed Plaintiff on paid administrative leave pending investigation, effective immediately.

116. Upon information and belief, management learned of the text messages and solicited a complaint from the Secretary in retaliation for Plaintiff's complaints to Human Resources.

**DEFENDANT NOTIFIED PLAINTIFF OF HIS PRE-DISCIPLINARY CONFERENCE**

117. By letter dated December 15, 2025, Defendant notified Plaintiff that a pre-disciplinary conference was scheduled to be held on December 18, 2025.

118. The notice alleged that Plaintiff violated the Anti-Harassment Policy and Code of Conduct by inadvertently sending messages to the Secretary from December 2023 to September 7, 2025.

**PLAINTIFF ATTENDED HIS PRE-DISCIPLINARY CONFERENCE**

119. On or about December 18, 2025, Plaintiff attended the pre-disciplinary conference.

**PLAINTIFF SUBMITTED A SUPPLEMENTAL WRITTEN STATEMENT TO TONELOTTI**

120. On or about December 22, 2025, Plaintiff submitted a supplemental written statement to Tonelotti, in which Plaintiff explained that the messages were inadvertently sent, that there was no inappropriate purpose for sending the messages, that he had permanently removed the Secretary's contact information from his phone upon realizing his error and that he would not engage in any personal messaging with coworkers moving forward.

121. Plaintiff also mentioned that he had never been accused of harassment or inappropriate conduct during his nearly 40-year experience in law enforcement.

**PLAINTIFF FOLLOWED UP REGARDING HIS REPORT OF THE UNLAWFUL RE-ENTRY**

122. On or about February 17, 2026, Plaintiff followed up on his report regarding the unlawful re-entry.

## DEFENDANT TERMINATED PLAINTIFF

123. Human Resources emailed Plaintiff and instructed him to attend a meeting on or about February 19, 2026.

124. On or about February 19, 2026, Plaintiff attended the meeting and was terminated for allegedly violating Plaintiff's Anti-Harassment Policy and Code of Conduct.

125. Defendant's stated reasons for terminating Plaintiff's employment were pretextual.

126. Plaintiff was 58 years old at the time of his termination.

127. Defendant discriminated against Plaintiff due to his age and associational disability and retaliated against him for his complaints of age discrimination, associational disability discrimination and sexual harassment in violation of the Title VII and the PHRA.

128. Defendant interfered with and retaliated against Plaintiff for utilizing his rights under the family-care provisions of the FMLA.

## COUNT I – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

129. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

130. Plaintiff was born in 1967.

131. Plaintiff was qualified to perform the job.

132. Defendant terminated Plaintiff.

133. Defendant treated younger employees more favorably than Plaintiff.

134. Defendant has no legitimate non-discriminatory reason for its actions.

135. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – ASSOCIATIONAL DISABILITY DISCRIMINATION PENNSYLVANIA HUMAN RELATIONS ACT

136. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

137. Plaintiff's son is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff's son has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff's son had a record of such an impairment or because Plaintiff's son was regarded as and/or perceived by Defendant and its agents as being disabled.

138. Plaintiff was qualified to perform the job.

139. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

140. Circumstances indicated that Plaintiff's son's disability was the reason for the adverse employment action.

141. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

142. Plaintiff's son's disability motivated Defendant's decision to terminate Plaintiff.

143. The purported reason for Defendant's decision is pretextual.

144. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

145. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

146. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

147. Plaintiff engaged in activity protected by Title VII.

148. Plaintiff complained about sexual harassment of female agents at Defendant to Defendant.

149. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

150. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IV – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

151. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

152. Plaintiff engaged in activity protected by the PHRA.

153. Plaintiff complained about age and associational disability discrimination and sexual harassment to Defendant.

154. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

155. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT V – INTERFERENCE**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

156. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

157. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

158. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA leave under the FMLA's family-care provisions to care for his son's serious health condition.

159. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

160. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

161. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

162. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

163. Plaintiff demands judgment in his favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

164. Plaintiff further demands judgment in his favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

**COUNT VI – RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

165. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

166. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

167. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his son's serious medical conditions.

168. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

169. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

170. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

171. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

172. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

173. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

174. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

175. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Thomas Sedor, requests that the Court grant him the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Liquidated damages;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding,

nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: September 14, 2026 **By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*